IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

CHRIS LINSCHEID, DAVID
YORK, JOHN SAXBY and
THOMAS BLADES,

      Plaintiffs,

v.

NATUS MEDICAL
INCORPORATED,

      Defendant.

CIVIL ACTION FILE

NO. 3:12-cv-67-TCB

## O R D E R

This action is before the Court on Defendant's motion for

summary judgment [78], Plaintiffs' motions to strike [84 & 97], and

Plaintiffs' motion for leave to file supplemental brief [96].

## I.    Plaintiffs' Motion for Leave to File Supplemental Brief [96]

Plaintiffs Chris Linscheid, David York, John Saxby and Thomas

Blades sought leave to file a supplemental brief in support of their

statement of material facts [96]. On July 31, 2014, before the Court

ruled on the motion, Plaintiffs filed their supplemental brief [102]. The

Court will grant Plaintiffs' motion for leave to file supplemental brief,

*nunc pro tunc* as of July 31, and will consider the brief that was filed by Plaintiffs on that date.

## II.   Plaintiffs' Motions to Strike [84 & 97]

Plaintiffs have also moved to strike declarations and exhibits thereto relied upon by Defendant Natus Medical Incorporated in support of its motion for summary judgment. "This court generally does not entertain motions to strike affidavits." *Smith v. Ortho Pharm. Corp.*, 770 F. Supp. 1561, 1581-82 (N.D. Ga. 1991). Motions to strike are governed by Federal Rule of Civil Procedure 12(f) and apply only to matters contained in a "pleading," which Rule 7(a) defines narrowly. Neither a motion for summary judgment nor a declaration supporting or opposing such a motion is a "pleading." *See* FED. R. CIV. P. 7(a) (narrowly defining "pleadings"); *Chavez v. Credit Nation Auto Sales, Inc.*, 966 F. Supp. 2d 1335, 1344 (N.D. Ga. 2013).

"Rather than filing a motion to strike as under Rule 12, the proper method for challenging the admissibility of evidence in an affidavit is to file a notice of objection to the challenged testimony." *Morgan v. Sears, Roebuck & Co.*, 700 F. Supp. 1574, 1576 (N.D. Ga. 1988); *see also* FED.

R. CIV. P. 56(c)(2) (permitting parties to file objections if opposing parties rely on facts that cannot be proved by admissible evidence). Accordingly, the Court will deny Plaintiffs' motions to strike [84 & 97].

The Court will, however, consider the objections raised in those motions if and when the challenged evidence becomes relevant to Defendant's motion for summary judgment. *Smith v. Se. Stages, Inc.*, 479 F. Supp. 593, 594 (N.D. Ga. 1977) (denying motion to strike but noting that the court would "implicitly, if not explicitly," address the objections raised therein when ruling on the substantive motion); *Chavez*, 966 F. Supp. 2d at 1344 (also denying motion to strike but indicating the Court would "consider the parties' arguments in support of their motions to strike as objections to the exhibits at issue and discuss where relevant").

## III.  Defendant's Motion for Summary Judgment [78]

### A.  Background

Defendant Natus Medical Incorporated designs, markets, and sells medical equipment, devices, and software to healthcare providers nationwide. The Natus employees who install this equipment after

3

purchase are known as field service specialists ("FSS") and were previously known as field service technicians.

Each Plaintiff worked for Natus as an FSS for some period of time between 2007 and 2011.[1] It is undisputed that during this time period, Natus classified all FSS as exempt from the overtime-pay requirements of the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA").[2] Each Plaintiff was paid a set salary that did not vary based on the hours worked each week. Those hours varied by employee and by week, but Plaintiffs generally worked between fifty-five and sixty hours per week.

Through this lawsuit, Plaintiffs seek to recover unpaid overtime wages.[3] Natus has moved for summary judgment, arguing that it

---

[1] Plaintiff York contends that he changed positions in December 2010 and worked as a "Help Level 7" or "HL7" specialist implementing the HL7 computer interface protocol for Natus's clinets. He does not seek overtime for the time he worked as an HL7 specialist; indeed, he effectively concedes he qualified as an exempt employee in that capacity. As discussed below, Natus takes the position that he performed exempt duties in his capacity as an FSS.

[2] In November 2012, Natus converted its FSS employees to hourly, non-exempt status.

[3] Plaintiffs sought to bring this suit as a collective action on behalf of themselves and other current and former FSS. In November 2012, the Court entered an order [23] denying Plaintiffs' motion for conditional certification, and in February 2014, the Court entered an order [76] denying Plaintiffs' renewed motion

properly classified Plaintiffs as exempt pursuant to the administrative exemption, the executive exemption, the computer-employee exemption, and/or the federal regulation permitting combining exemptions.

### B.   Legal Standard on a Motion for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

---

for conditional certification. Thus, as it is now proceeding, the case involves only the four Plaintiffs' claimed entitlement to overtime compensation.

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex*, 477 U.S. at 324). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 323).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota*

6

*White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).

The burden is on Natus to prove that Plaintiffs were properly classified as exempt from the FLSA's overtime requirements. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008). This burden is a heavy one: Natus "must prove applicability of an exemption by 'clear and affirmative evidence.'" *Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992) (quoting *Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir. 1984)).[4] An exemption must be narrowly construed against the employer seeking to assert it and may be applied "only to those [employees who are] clearly and

---

[4] As explained by the Tenth Circuit, from whose opinions the "clear and affirmative evidence" standard is derived:

> Our use of "clear and affirmative evidence" has lead [sic] to confusion whether this in fact means clear and convincing evidence—a burden beyond the preponderance of evidence standard traditionally applied in civil cases. This is not the case; instead, clear and affirmative evidence is simply an invocation of the familiar principle of statutory interpretation that exemptions from a statute that creates remedies . . . should be construed narrowly and also that the burden of proof is on the employer, since entitlement to an exemption is an affirmative defense.

*Fowler v. Incor*, 279 F. App'x 590, 592 (10th Cir. 2008) (internal punctuation and citations omitted).

unmistakably within the terms and spirit of the exemption." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008); *see also A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 494 (1945).

## C.   Analysis

### 1.   Overtime Compensation Under the FLSA

The FLSA establishes minimum labor standards to eradicate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The statute was designed to "aid the unprotected, unorganized, and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945). A cornerstone of the FLSA is the requirement to pay employees overtime when they work more than forty hours in a week. 29 U.S.C. § 207(a)(1).

> By establishing a floor for wages and a ceiling for hours worked without overtime compensation, lawmakers attempted "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing

employers to shorten hours because of the pressure of extra cost."

*Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1311 (11th Cir. 2007) (quoting

*Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948)).

But there are exemptions to this requirement that may apply depending on the type of work the employee performed. Three exemptions are at issue in this case. First, Natus contends that all four Plaintiffs were exempt because they were "employed in a bona fide administrative capacity." 29 U.S.C. § 213(a)(1). The implementing regulations define this exemption to cover any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ;[5]
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (footnoted added).

---

[5] It is undisputed that Plaintiffs were compensated on a salary basis of at least $64,000 annually, well above the $455-per-week minimum.

Second, Natus reasons that York was properly treated as exempt

pursuant to the computer-employee exemption, which applies to

> any employee who is a computer systems analyst, computer
> programmer, software engineer, or other similarly skilled
> worker, whose primary duty is—
>
>> (A) the application of systems analysis techniques and
>> procedures, including consulting with users, to determine
>> hardware, software, or system functional specifications;
>>
>> (B) the design, development, documentation, analysis,
>> creation, testing, or modification of computer systems or
>> programs, including prototypes, based on and related to
>> user or system design specifications;
>>
>> (C) the design, documentation, testing, creation, or
>> modification of computer programs related to machine
>> operating systems; or
>>
>> (D) a combination of duties described in subparagraphs
>> (A), (B), and (C) the performance of which requires the
>> same level of skills, and who, in the case of an employee
>> who is compensated on an hourly basis, is compensated at
>> a rate of not less than $27.63 an hour.

29 U.S.C. § 213(a)(17).

Third, and finally, Natus argues that even if no individual

exemption applies to Plaintiffs, Plaintiffs were nevertheless properly

treated as exempt employees pursuant to the regulation permitting the

10

combining of exemptions. This combination exemption provides, in

pertinent part, as follows:

> Employees who perform a combination of exempt duties as
> set forth in the regulations in this part for executive,
> administrative, professional, outside sales and computer
> employees may qualify for exemption. Thus, for example, an
> employee whose primary duty involves a combination of
> exempt administrative work and exempt executive work may
> qualify for exemption. In other words, work that is exempt
> under one section of this part will not defeat the exemption
> under any other section.

29 C.F.R. § 541.708. Natus contends that all Plaintiffs' duties fall under

the exemptions applicable to the administrative, computer, or executive

employees.[6]

### 2.    Primary-Duty Analysis

The application of these exemptions to Plaintiffs turns on

Plaintiffs' "primary duty." *Morgan*, 551 F.3d at 1266; 29 U.S.C. § 213.

The regulations implementing the FLSA define this term as follows:

---

[6] The executive exemption applies to an employee who is "[c]ompensated on a
salary basis at a rate of not less than $455 per week," "[w]hose primary duty is
management of the enterprise in which the employee is employed," "[w]ho
customarily and regularly directs the work of two or more other employees," and
"[w]ho has the authority to hire or fire other employees." 29 C.F.R. § 541.100(a).
Natus does not argue separately for the application of this exemption to any
Plaintiff. Instead, it argues only that this exemption is relevant for the combination-
exemption analysis.

> The term "primary duty" means the principal, main, major, or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a); *see also Ferrell v. Gwinnett Cnty. Bd. of Educ.*, 481 F. Supp. 2d 1338, 1343 (N.D. Ga. 2007).

The Eleventh Circuit has noted the "necessarily fact-intensive nature of the primary duty inquiry." *Morgan*, 551 F.3d at 1269. Where there is conflicting evidence about the employees' primary duties, summary judgment in favor of either party is improper. *Coppage v. Bradshaw*, 665 F. Supp. 2d 1361, 1365 (N.D. Ga. 2009) ("This evidence shows that there is a factual dispute as to Coppage's primary duty that precludes summary judgment for either party on the outside salesman exemption."); *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 828 (10th Cir. 2012) ("Because the primary duty inquiry presents a question

of fact, summary judgment is proper only if there was no genuine dispute regarding plaintiffs' primary duties.").

### 3. Evidentiary Matters

Before turning to the evidence relating to Plaintiffs' primary duties, there are a number of evidentiary issues the Court must address. Natus has taken the unusual route of seeking summary judgment on the inherently fact-intensive issue of Plaintiffs' primary duties without having deposed any one of the four Plaintiffs. As a result, the parties each attempt to prove (in the case of Natus) or dispute (in Plaintiffs' case) the nature of Plaintiffs' job duties by reference to evidence and affidavits challenged by the other. The Court therefore must evaluate these evidentiary issues in order to determine what evidence it may rely on for purposes of analyzing Natus's motion for summary judgment.

### a. Rossi and White Declarations

Natus attempts to prove Plaintiffs' primary duties by relying heavily on the declaration of Joice White [78-4] and (less heavily) on the declaration of Sharon Rossi [78-3]. White has served as Natus's senior

13

director of service since 2006, and Rossi is an attorney of record for Natus in this action. Plaintiffs first object that both declarations should be disregarded in their entirety for violating 28 U.S.C. § 1746, which requires a declarant to attest to the truthfulness of her statement "in substantially the following form: . . . 'I declare . . . under penalty of perjury *under the laws of the United States of America* that the foregoing is true and correct.'" (Emphasis added.) Rossi's and White's declarations are made "under penalty of perjury . . . under the laws of the State of California." This language substantially complies with the requirements of § 1746. *See Buckheit v. Dennis*, No. 3:09-cv-5000-JCS, 2013 WL 427122, at *1 (N.D. Cal. Feb. 4, 2013) (declaration made "under penalty of perjury under the laws of the State of California" substantially complied with § 1746), *rev'd on other grounds*, 573 F. App'x 662 (9th Cir. 2014). The Court therefore overrules Plaintiffs' objection and will not reject the declarations in toto. *Gaylor v. Greenbriar of Dahlonega Shopping Center, Inc.*, 975 F. Supp. 2d 1374, 1381 (N.D. Ga. 2013) (court may disregard objectionable portions of declaration but consider remainder).

14

Plaintiffs also object to the Court's consideration of exhibits attached to the declarations: a document purporting to be Plaintiff Blades's resume from Indeed.com (attached as Exhibit C to Rossi's declaration and Exhibit A to White's declaration) and a document purporting to be a LinkedIn profile for Plaintiff Linscheid (attached as Exhibit B to Rossi's declaration). Rossi testifies that she located these documents on the Internet and that she provided the LinkedIn profile to White, something White confirms in her own declaration. Plaintiffs argue that these third-party documents are not properly authenticated. *See* Fed. R. Evid. 901 (evidence must be authenticated through "evidence sufficient to support a finding that the item is what the proponent claims it is"). The Court agrees.

To be admissible, social media and similar online postings must be authenticated under Rule 901 of the Federal Rules of Evidence or must meet Rule 902's requirements for self-authenticating business records, which requires "a certification of the [records] custodian." *United States v. Hassan*, 742 F.3d 104 (2014); *United States v. Vayner*, 769 F.3d 125, 127 (2d Cir. 2014) (reversing admission of social-media profile that was

15

not properly authenticated); *Randazza v. Cox*, No. 2:12-cv-2040, 2014 WL 1407378, at *4 (D. Nev. Apr. 10, 2014). As Natus has made no effort to authenticate the two exhibits at issue, the Court concludes they are inadmissible. The exhibits also constitute inadmissible hearsay. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (court may not rely on hearsay at summary judgment). Natus attempts to rely on the exhibits for the truth of the matter asserted therein—i.e., to prove the nature of Linscheid's and Blades's job duties at Natus—without demonstrating that the rule against hearsay does not apply or that an exception to that rule is applicable.[7] Therefore, the Court will not consider these exhibits for purposes of ruling on Natus's motion.

### b.    Sullivan and Franklin Declarations

Plaintiffs also ask the Court to disregard the declarations of Sherry Franklin [94-1] and Roger Sullivan [94-2] submitted with Natus's reply brief. Plaintiffs argue that neither individual was ever

---

[7] Pursuant to Rule 801(d)(2)(A) of the Federal Rules of Evidence, a party's own social-media posting may, under appropriate circumstances, constitute non-hearsay, but the proponent of such evidence must "show by a preponderance of the evidence that the opposing party had made the statement," which Natus has not done in this case. *United States v. Brinson*, 772 F.3d 1314, 1320 (10th Cir. 2014).

disclosed as a potential witness in this action. The Court rejects this argument. Sullivan was identified in Natus's responses to two of Plaintiffs' interrogatories. [97-1], pp.6, 49. Natus concedes that Franklin was never identified but correctly argues that because her declaration was used "solely for impeachment," her identity did not have to be disclosed under Rule 26(a)(1)(A). This is particularly true because Franklin's knowledge and testimony does not relate to Plaintiffs personally, nor even to the FSS job generally, but only to Natus's accounting and payroll practices, which were at best tangentially in issue until Plaintiffs relied on payroll records in their opposition to Natus's motion.

The exhibits attached to the two declarations, however, are another story. Exhibit A to Franklin's declaration is a one-page excerpt from York's payroll records. This document was plainly responsive to Plaintiffs' twelfth request for production of documents, but apparently was never produced. [97-2], p.16 ("Produce any and all documents related to the wages paid to Plaintiffs . . . during their employment including, but not limited to, all payroll records . . . ."). Exhibit B to

17

Franklin's deposition—a three-page excerpt from the American Payroll Association's Basic Guide to Payroll—was similarly responsive to Plaintiffs' thirty-seventh request, which asked Natus to produce "all documents related to [its] contention that . . . Plaintiffs' compensation was intended for all hours worked each workweek." [97-2], p.46. Natus contends that these documents were used "solely to impeach" Plaintiffs' testimony that their salaries were intended to cover only 86.67 hours of work per pay period; in other words, Natus admits that these documents support its claim that "Plaintiffs' compensation was intended for all hours worked each workweek." *Id.*

The documents attached to Franklin's deposition should have been but were not produced by Natus during discovery. Because Natus has not shown that its failure was harmless or substantially justified, the Court will not consider these documents for purposes of resolving Natus's motion. *See* FED. R. CIV. P. 37(c)(1) (a party who fails to provide information required under Rule 26(e)—requiring a party supplement an incomplete or inaccurate discovery response—"is not allowed to use

that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless").

Attached to Sullivan's declaration are nine documents Plaintiffs contend were never produced by Natus. These documents are Natus installation and training records and certifications signed by Plaintiffs and directly related to Plaintiffs' job duties and assignments as FSS. Even assuming that these documents should not have been produced as part of Natus's initial disclosures under Rule 26(a), they arguably should have been produced in response to Plaintiffs' fourteenth and fifteenth requests for production of documents, which called, respectively, for the production of "work documents identifying the date . . . created" and "all documents supporting [Natus's] claim" that FSS were exempt employees. [97-2], pp.17-18.

But without question, these documents should have been produced in response to Plaintiffs' request for "any and all documents related to Plaintiffs' job assignments/work performed during the relevant time period," including documents (1) "related in any way to each assignment performed by Plaintiffs," (2) "created by Plaintiffs

related to their job assignments," (3) "identifying the specific clients for whom Plaintiffs performed jobs," (4) "identifying the dates . . . Plaintiffs performed work for each client," (5) "describing or discussing Plaintiffs' job assignments," or (6) otherwise "related to the work performed by Plaintiffs." [97-2], pp. 40-41.[8] Natus contends the failure must be considered harmless because Plaintiffs were aware of the existence of the documents—as evidenced by their signatures on them—the Court is unpersuaded.[9] Because Natus failed to produce these responsive documents and again has not shown that its failure was substantially justified or harmless, the Court will not consider them for purposes of resolving Natus's motion for summary judgment. FED. R. CIV. P. 37(c)(1).

---

[8] This is not an exhaustive list of the discovery requests to which the documents attached to Sullivan's declaration were responsive.

[9] Natus's reliance on *Trujillo v. Bd. of Educ.*, 230 F.R.D. 657, 660-61 (D.N.M. 2005) is misplaced. There, the district court refused to restrict a plaintiff's use of an audio tape that she never produced to the defendant, finding such failure substantially harmless because, among other reasons, the defendant knew of the tape but never requested it during discovery. Here, conversely, the documents that were not produced were requested by Plaintiffs.

### c.   Plaintiffs' Declarations

Each Plaintiff submitted a lengthy declaration in opposition to Natus's motion for summary judgment. [90-1] (Linscheid Dec.), [90-4] (York Dec.), [90-7] (Saxby Dec.), [90-10] (Blades Dec.). Natus argues in its objections to Plaintiffs' statement of facts [93] that this is improper, but such declarations are expressly contemplated at summary judgment provided they meet the requirements of Rule 56(c)(4) and are not inconsistent with prior deposition testimony. *See Jackson v. Advance Auto Parts, Inc.*, 362 F. Supp. 2d 1323, 1325 (N.D. Ga. 2005) ("A party . . . may not substitute an affidavit alleging helpful facts *in place of earlier deposition testimony* in hopes of avoiding summary judgment." (emphasis added)); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986) (court may disregard "sham" affidavit that "flatly contradicts" prior testimony).

Natus suggests that the fact that Plaintiffs' declarations are substantially similar—and in fact, nearly identical—is unsurprising in light of Plaintiffs' contention that they were similarly situated and employed in the same capacity for Natus. The fact that the declarations,

in places, use the third-person narrative to refer to the declarant is likewise not fatal. The Court also rejects the argument that the declarations' occasional use of the third-person to refer to the declarant is suggestive of a lack of personal knowledge. It is suggestive only of a lack of attention to detail by Plaintiffs and their counsel, but there can be no reasonable dispute that the matters addressed in the declarations—which go to the declarants' education, positions, and job duties—are well within the knowledge of the respective declarants.

The Court will not disregard Plaintiffs' declarations in their entirety nor in substantial part. It will disregard only those portions that are not made on personal knowledge, contain inadmissible hearsay, or contain legal conclusions. As to the remainder of Plaintiffs' assertions, whether statements in an affidavit are true or whether an affiant is misrepresenting facts is not a question for the court to address at summary judgment. "This is plainly an issue of credibility . . . ." *Duke v. Nationstar Mortg., LLC*, 893 F. Supp. 2d 1238, 1245 (N.D. Ala. 2012).

### d.    The Parties' Statements of Material Facts

Finally, in support of its motion for summary judgment, Natus submitted a statement containing ninety-three facts they contend are undisputed. Plaintiffs concede only twenty-four of Natus's facts, arguing that the evidence is in dispute as to the remaining facts and further responding with 199 facts they contend present a genuine dispute for trial. Few of Plaintiffs' facts are conceded by Natus, and Natus objects to the majority of them, going so far as filing a separate sixty-two page brief [93] setting forth their many objections to Plaintiffs' factual assertions. Suffice to say, the parties have raised a litany of evidentiary issues for the Court to wade through in analyzing the instant motion for summary judgment. The Court will not undertake in this Order the Sisyphean task of expressly addressing each and every objection or dispute. But the Court has considered each party's responses and objections to the factual recitations offered by the opposing party and will "implicitly, if not explicitly, rule upon these objections in its consideration[] of the motion." *Smith*, 770 F. Supp. at 1582.

23

### 4.   The Evidence Regarding Plaintiffs' Job Duties

To obtain summary judgment, Natus must show that Plaintiffs' primary duties fall within the terms of the administrative exemption or the computer-employee exemption, or that their primary duties involve a combination of exempt administrative, computer, and executive work such that the combination exemption applies. Natus must point to undisputed evidence demonstrating that Plaintiffs fit "clearly and unmistakably within the terms and spirit of the" claimed exemption. *Morgan*, 551 F.3d at 1269. Because the evidence regarding Plaintiffs' primary duties is in dispute, it cannot be said as a matter of law that they were exempt and Natus's motion for summary judgment on that issue will be denied.

#### a.   Administrative Exemption

For Plaintiffs to qualify as exempt pursuant to the administrative exemption, their primary duties must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). This is "distinguished, for example, from

24

working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). Furthermore, the duties must "include[] the exercise of discretion and independent judgment with respect to maters of significance." *Id.* § 541.200(a)(3).The Ninth Circuit has explained that the administrative exemption reaches those employees engaged in "the running of a business, and not merely the day-to-day carrying out of its affairs." *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990) (internal punctuation omitted). Courts have previously found employees to qualify for this exemption where their "primary duties" consisted of serving "as a consultant to [the employer's] clients" and worked with those clients "to help them make their businesses run more efficiently," including by "implement[ing] and install[ing] software programs for their employer's clients and customers." *Carbaugh v. Unisoft Int'l, Inc.*, No. H-10-0670, 2011 WL 5553724, at *21 (S.D. Tex. Nov. 15, 2011). But in *Carbaugh*, the very purpose of the software program at issue was to "automate [the employer's] clients' business," *id.* at *23, such that implementing that

software was inextricably intertwined with "the running of [the client's] business," *Bratt*, 912 F.2d at 1070.

In this case, it is apparent that Plaintiffs' job duties included the installation of proprietary software for Natus's clients, but the testing software being installed was not designed and did not function to run the client's business, but only to carry out its routine day-to-day functioning. Additionally, the evidence shows that Plaintiffs' duties included some manual labor and that they at least sometimes took direction from another Natus employee or somebody at the client's site. Plaintiffs were responsible for configuring and integrating the software into the customer's computer network, but many decisions—for example, the specific equipment to be installed and the placement of that equipment upon installation—was made by other Natus employees. Plaintiffs testify in their declarations that training customers to use the equipment was left to other Natus employees ("educators"), not FSS. It is impossible to discern from the record which of Plaintiffs' duties were considered "primary." In sum, there is evidence that, if credited, would allow a factfinder to determine that Plaintiffs

were exempt employees, but the evidence is not so undisputed that it compels that conclusion.

### b.   Computer-Employee Exemption

The parties do not dispute that at some point during his employment, York performed job duties that would qualify him as exempt under the computer-employee exemption. The issue instead is whether he performed those duties as an FSS, or whether he changed positions and undertook those duties only in his new capacity as an HL7 specialist.

In December 2011, York sent an e-mail to Natus's president and COO in which he recounts, in some detail, his then-current job duties. [74], p.17. He takes the position that he was an HL7 specialist at that time and had been since approximately November 2010, relying on his own declaration testimony that "[d]uring [his] last year employed by Defendant, [he] was in the position of HL7 implementation which had different job duties than FSS." [90-4], ¶ 135; *see also* [83], p.24 ("In approximately November, 2010, Plaintiff York changed positions and became an HL7 . . . Specialist with Defendant until December 2011.").

York does not dispute that the job duties described in his e-mail qualify him as exempt pursuant to 29 U.S.C. § 213(a)(17). Natus responds that "it is beyond dispute that at all times, York was employed as an FSS," pointing out that "York identifies himself as a FSS in the very email" at issue. [94], p.12.

Natus is correct. At the end of York's e-mail, he signs it "David York, Field Service Specialist." [74], p.18. And there is no dispute that the job duties described in that e-mail fall within those described in 29 U.S.C. § 213(a)(17). But whatever doubts the Court has about York's ability to ultimately overcome this damning evidence, there is no basis upon which to grant Natus summary judgment. As discussed above, a court may and should disregard a plaintiff's self-serving declaration testimony when it conflicts with prior sworn testimony. Here, however, York's declaration conflicts with a representation he made in an unsworn e-mail. Though case law is sparse, one district court recently addressed this very issue and concluded that a plaintiff's declaration testimony was admissible and valid evidence even though it conflicted

with numerous prior e-mails authored by the plaintiff. *Malave-Torres v. Cusido*, 919 F. Supp. 2d 198, 205-06 (D.P.R. 2013).

In *Malave-Torres*, the plaintiff filed a pregnancy-discrimination action against her employer and an individual defendant, both of whom subsequently moved for summary judgment. The plaintiff opposed summary judgment by "rel[ying] heavily" on facts that were "only supported by [her] sworn affidavit," which had been executed a month and a half after the defendants filed their motion. Among other issues raised regarding the affidavit, the defendants argued that "the contents of the Affidavit contradict numerous e-mails previously written by Plaintiff." The court noted that "[i]ndications exist that the Affidavit at issue . . . is a sham," but nevertheless declined to extend the sham-affidavit rule, holding that "[i]t would be up to the jury to decide how much weight to give Plaintiff's testimony when it hears her testify."[10]

---

[10] The court in *Malave-Torres* declined to follow the Fourth Circuit's opinion in *Altemus v. Federal Realty Investment Trust*, 490 F. App'x 532, 536-37 (4th Cir. 2012), which did disregard an affidavit that was not well supported by the evidence of record. But there, the court noted there was "extensive evidence to the contrary," rendering the affidavit no more than "a scintilla of evidence" insufficient to withstand summary judgment. Here, conversely, there is only one e-mail contradicting York's statement that he was an HL7 specialist in December 2011. Even Joice White, on whose declaration Natus relies, testifies only that she "believe[d]" York's e-mail accurately described his job duties as an FSS; she never states that he did not change job positions.

Genuine issues of material fact exist regarding whether—and if so, when—York changed job positions and the nature of his job duties as an FSS versus those he performed only as an HL7 specialist, if the factfinder concludes he did change positions. These factual questions preclude the granting of Natus's motion as to York.

### c.    Combination Exemption

Finally, the Court could enter summary judgment on the combination exemption only if the undisputed evidence showed that Plaintiffs' primary duties involved a combination of otherwise exempt work. 29 C.F.R. § 541.708. As discussed above, that is impossible on the record in this case.

The only other exemption not addressed above that is relevant to the combination analysis is the executive exemption. To satisfy that exemption, the employee's primary duty must be "management" of the employer's enterprise. 29 C.F.R. § 541.100(a)(2). "Management" includes training employees, directing the work of others, planning work, and apportioning the work among employees. 29 C.F.R. § 541.102. As with the administrative exemption, there is evidence

showing that Plaintiffs performed some of these duties, but the Court cannot conclude beyond dispute whether those duties were relatively unimportant vis-à-vis other FSS duties, how much time Plaintiffs spent performing those exempt duties, the relationship between Plaintiffs' FSS salaries and salaries or wages paid to other employees who did not perform these exempt duties.

Because genuine issues of material fact exist regarding the primary duties of FSS, the Court cannot conclude as a matter of law that any or all of the claimed exemptions are applicable. Accordingly, Natus's motion for summary judgment must be denied with respect to its claim that Plaintiffs were exempt from the FLSA's overtime requirements.

### D. Statute of Limitations

"Although the ordinary statute of limitations in cases brought under the FLSA is two years, a cause of action arising out of a willful violation of the FLSA may be commenced within three years after the cause of action accrued." *Allen*, 495 F.3d at 1323 (citing 29 U.S.C. § 255(a)). "A willful violation may be found when the employer

31

'disregarded the very 'possibility' that it was violating the statute.'" *Id.* (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908-09 (9th Cir. 2003)). Natus argues that—even if summary judgment is otherwise denied—it is entitled to summary judgment on Plaintiffs' claim that any violation was willful.

In appropriate cases, the issue of willfulness may be decided as a matter of law on a motion for summary judgment. *See, e.g., Lockaby v. Top Source Oil Analysis, Inc.*, 998 F. Supp. 1469, 1472-73 (N.D. Ga. 1998). But where, as here, "triable issues of fact remain as to some Plaintiffs' claims that they worked overtime without compensation[,] . . . a determination of which statute of limitations to apply must be reserved until it is determined whether a violation of the FLSA occurred." *Allen*, 495 F.3d at 1324; *accord Cain v. Almeco USA, Inc.*, No. 1:12-cv-3296-TWT, 2013 WL 6051023, at *6 (N.D. Ga. Nov. 15, 2013) (where genuine issues of material fact preclude summary judgment on applicability of exemption, summary judgment should likewise be denied as to willfulness and statute of limitations).

### E.   The Appropriate Measure of Damages

Finally, Natus asks the Court to rule as a matter of law on the method that should be used to calculate Plaintiffs' damages, if any. All parties agree that if Plaintiffs were misclassified as exempt, they are entitled to overtime compensation "at a rate not less than one and one-half times the *regular rate* at which [they were] employed." 29 U.S.C. § 207(a)(1) (emphasis added). The parties likewise agree that Plaintiffs' "regular hourly rate of pay . . . is computed by dividing the salary by the *number of hours which the salary is intended to compensate.*" 29 C.F.R. § 778.113(a) (emphasis added).

Natus argues that the undisputed evidence of record shows that Plaintiffs' salaries were intended to cover all hours worked in a given pay period. Plaintiffs argue that "Defendants' own payroll records indicate that [Plaintiffs'] bimonthly salary was intended to cover 86.67 hours—not the unlimited number of hours worked by Plaintiffs." [83], pp.32-33. In support of this argument, Plaintiffs rely only on their own declarations, each of which states:

> Prior to the change in classification, Defendant's payroll records show that the FSS salary was intended to cover 86.67 hours for each two week period of time.

[83-3], ¶ 173 (Linscheid Dec.); [83-5], ¶ 142 (York Dec.); [83-7], ¶ 153 (Saxby Dec.); [83-9], ¶ 147 (Blades Dec.). Natus does not dispute that its payroll records show that the payroll period consists of 86.67 hours. However, it relies on the declaration testimony of Sherry Franklin, a senior payroll specialist with Natus, that "[t]he 86.67 hours total shown on Plaintiffs' semi-monthly payroll records is neither an indication of the hours actually worked nor is it a reflection of the hours the Plaintiffs' salaries were intended to cover." [94-1], ¶ 7. Instead, "the 86.67 figure is a standard accounting device" used by Natus for internal accounting purposes only. *Id.* ¶¶ 5, 7.

Plaintiffs have not pointed to any evidence of record to support their conclusory testimony that their salaries were intended to cover 86.67 hours per payroll period. Significantly, in their lengthy declarations, Plaintiffs do not testify that that was their understanding, that anybody ever told them that was the case, or that such intention was documented in any policy. Neither do they rebut Franklin's

34

testimony or suggest she lacks personal knowledge of the matters testified to.

In *Zoltek v. Safelite Glass Corp.*, 884 F. Supp. 283, 287 (N.D. Ill. 1995), the plaintiff made the same argument put forth by Plaintiffs in this case, namely, that the pay stubs' reference to "86.67 hours" per pay period was "indicative of an intent by the parties that [the plaintiff] was to be paid on an hourly basis and that he was to receive compensation in addition to his salary for overtime hours." The court rejected the argument, noting that "employment records are not controlling on the issue of regular rate of pay" and that the employer's explanation that the 86.67 was an accounting technique was uncontradicted. *Id.* (internal punctuation omitted). The court therefore used the half-time method to calculate the overtime pay that was owed to the plaintiff. *Accord Rushing v. Shelby County Gov't*, 8 F. Supp. 2d 737, 744 (W.D. Tenn. 1997) (rejecting a similar argument and likewise noting that the payroll documentation was "not controlling").

Here, as in *Zoltek*, the evidence is undisputed that Plaintiffs were paid a fixed salary and that their salary never changed whether the

hours actually worked in a given pay period were greater or fewer than the 86.67 shown on the payroll records. The evidence in this case does not provide any basis on which a reasonable jury could conclude anything other than that Plaintiffs' salaries were intended to cover all hours worked. That being the case, Plaintiffs' regular rate of pay must be calculated by dividing their weekly salaries by the number of hours they actually worked in a given week. *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 579-80 (1942), *superseded on other grounds by statute*, 29 U.S.C. § 260, *as recognized in TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 128  n.22 (1985). This compels a finding that Plaintiffs have already been compensated at their "regular rate" for all hours worked. And it compels the concomitant conclusion that any overtime compensation owed to Plaintiffs in this case must be computed at one-half their regular rate so that their total compensation—inclusive of what they were paid during their employment—for all overtime hours worked is one and a half times their regular rate of pay.

To be clear, Natus does not argue and the Court does not find that Plaintiffs were employed to any fluctuating workweek ("FWW")

arrangement contemplated by 29 C.F.R. § 778.114.[11] Nor does the Court

suggest that § 778.114's FWW framework is the appropriate method of

calculating overtime damages in all FLSA misclassification cases or

that such an issue is always ripe for adjudication at summary

judgment. But in this case, the undisputed evidence shows that

Plaintiffs' salaries were intended to cover all hours worked. "[A] non-

exempt employee who receives a weekly salary for all hours worked has,

by definition, already been paid his 'regular rate' for all hours worked in

the workweek" and "is only owed half-time for any hours worked in

excess of forty per week." *Torres v. Bacardi Global Brands Promotions,*

*Inc.*, 482 F. Supp. 2d 1379, 1381-82 (S.D. Fla. 2007); *Martin v. S.*

---

[11] Judge Story aptly and succinctly summarized the FWW method of damages calculation as follows:

> An alternative to the standard method for calculating overtime pay is the fluctuating workweek ("FWW") method, set out by the Department of Labor in 29 C.F.R. § 778.114(a). The FWW method of compensation applies to employees who are compensated at a fixed amount per week irrespective of the numbers of hours worked during that week. 29 C.F.R. § 778.114(a). Upon meeting the requirements under 29 C.F.R. § 778.114(a), the FWW allows payment for overtime hours at a rate of 0.5 times the regular pay.

*Allen v. SunTrust Banks, Inc.*, No. 1:06-cv-3075-RWS, 2008 WL 4394732, at *4 (N.D. Ga. Sept. 24, 2008).

*Premier Contractors, Inc.*, No. 2:11-cv-197-RWS, 2013 WL 822635, at
*10 (N.D. Ga. Mar. 6, 2013) (where a plaintiff's "salary was intended to
compensate him for fluctuating work hours, the overtime premium to
which he would be entitled properly would be calculated on a half-time
basis"); *see also Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665,
678 (7th Cir. 2010) (noting that "[d]espite the nonremedial nature of the
rule, a number of courts—both appellate and district—have relied on
section 778.114(a) in fashioning relief for cases in which an employee
receiving a fixed wage has been misclassified as exempt from the
overtime mandate of the FLSA," and collecting cases).

## IV.  Conclusion

For the foregoing reasons, Plaintiffs' motion for leave to file a
supplemental brief [96] is granted *nunc pro tunc* to July 31, 2014.
Plaintiffs' first and second motions to strike [84 & 97] are denied.
Defendant's motion for summary judgment [78] is granted in part and
denied in part. The motion is granted with respect to the proper method
for calculating damages in this case, but it is denied in all other
respects.

IT IS SO ORDERED this 30th day of March, 2015.

Timothy C. Batten, Sr.
United States District Judge